IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Jennifer C., | ) |
| | ) |
|     *Plaintiff*, | ) |
| | ) Case No. 3:23-cv-50347 |
| v. | ) |
| | ) Magistrate Judge Lisa A. Jensen |
| Martin J. O'Malley, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     *Defendant*. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jennifer C. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying her applications for disability insurance benefits and supplemental security income.[1] For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded.

**I. Background**

In September 2018, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging a disability beginning on January 21, 2016 because of Meniere's disease, vertigo, tinnitus in the left ear, hearing loss in the left ear, anxiety, and depression. R. 120–21, 154. Plaintiff was 28 years old on her alleged onset date.

Following a hearing, an administrative law judge ("ALJ") issued a decision in April 2021[2] finding that Plaintiff was not disabled. R. 15–33. The ALJ found that Plaintiff had the following

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 7.

[2] The ALJ issued a decision on March 23, 2021, and then issued an amended decision on April 2, 2021. *See* R. 43–61.

1

severe impairments: Meniere's disease, migraine headaches, vestibular disease, and hearing loss.[3] The ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain restrictions. The ALJ determined that Plaintiff could perform her past relevant work as a personal shopper, as actually and generally performed. The ALJ also determined that there were other jobs that existed in significant numbers in the national economy that she could perform, namely light, unskilled jobs.

After the Appeals Council denied Plaintiff's request for review on September 12, 2023, R. 1, Plaintiff filed the instant action. Dkt. 1.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* When reviewing the ALJ's decision, the court's inquiry is limited to determining whether the ALJ's decision is supported by substantial evidence or resulted from an error of law. *Mandrell v. Kijakazi*, 25 F.4th 514, 515 (7th Cir. 2022). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek*, 587 U.S. at 103). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate

---

[3] The ALJ listed Plaintiff's major depressive disorder and generalized anxiety disorder as severe impairments but in analyzing Plaintiff's mental impairments found them "nonsevere." R. 18.

findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1054 (internal quotation marks and citation omitted). To determine whether substantial evidence exists, the court reviews the record as a whole but "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Id.* at 1052–53; *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). Thus, if there is substantial evidence supporting the ALJ's disability determination, the court "must affirm the decision even if reasonable minds could differ concerning whether [the claimant] is disabled." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (internal quotation marks and citation omitted).

### III. Discussion

Plaintiff challenges the ALJ's decision on three grounds: (1) the ALJ failed to conduct a proper assessment of listing-level severity as to Plaintiff's migraines pursuant to Social Security Ruling 19-4p; (2) the ALJ failed to include any assessment of how Plaintiff's combined impairments limit her ability to sustain the on-task and attendance requirements of full-time work; and (3) the ALJ failed to support her rejection of two treating source opinions that Plaintiff would be absent from work at least four days per month. As explained below, the Court agrees that the ALJ's listing analysis of Plaintiff's migraines requires a remand.

A claimant is eligible for benefits if she has an impairment that meets or equals an impairment found in the listing of impairments. 20 C.F.R. § 404.1520(d). The listings specify the criteria for impairments that are considered presumptively disabling. 20 C.F.R. § 404.1525(a). A claimant may also demonstrate presumptive disability by showing that her impairments are accompanied by symptoms that are equal in severity to those described in a specific listing. 20 C.F.R. § 404.1526(a). Therefore, at step three of the sequential evaluation process, an ALJ must

3

determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The listings contain no specific entry for migraines or headaches. However, Social Security Ruling 19-4p provides that Listing 11.02 for epilepsy is most analogous for evaluating migraines and notes that a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in paragraphs B or D of Listing 11.02 for dyscognitive seizures. Social Security Ruling 19-4p, 2019 WL 4169635, at *7; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.02. Social Security Ruling 19-4p provides:

> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description from an AMS [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).
>
> Paragraph D of listing 11.02 requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02D, we consider the same factors we consider for 11.02B and we also consider whether the overall effects of the primary headache disorder on functioning results in marked limitation in: Physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.

Social Security Ruling 19-4p, 2019 WL 4169635, at *7.

Here, the ALJ found Plaintiff's migraines to be a severe impairment at step two. At step three, the ALJ concluded that Plaintiff's migraines did not meet or medically equal a listed impairment. The entirety of the ALJ's discussion is as follows:

> In terms of the claimant's migraine headaches, because there are no Listings for migraine headaches, the claimant's impairment was evaluated under Listing 11.00 for Neurological Disorders - Adult. The claimant does not have a condition or combination of conditions that give[] rise to a condition of Listing-level severity under this section. The undersigned notes that the claimant's headaches have been evaluated under SSR 19-4p, which instructs adjudicators on the analysis of primary headache disorders. Although this SSR only provides information about four common types of primary headache disorders, diagnostic criteria for other types of primary headache disorders can be found in the ICHD-3.

R. 21.

Plaintiff argues that the ALJ erred by proving a conclusory evaluation while also failing to address the medical evidence in the record supporting the conclusion that Plaintiff's migraines medically equaled Listing 11.02. In response, the Commissioner does not dispute that the ALJ's analysis was perfunctory. Instead, the Commissioner maintains that the ALJ was not required to give a "robust and fulsome discussion" as to whether Plaintiff medically equaled the listing, and that "there is no statutory or regulatory authority" that requires the ALJ to do more than state that Plaintiff does not medically equal a listing. Dkt. 20 at 3, 4. In support, the Commissioner cites to a portion of Social Security Ruling 17-2p, stating:

> If an adjudicator at the hearings or AC level believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, *the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding.*

5

Def.'s Resp. at 3–4, Dkt. 20 (citing Social Security Ruling 17-2p, 2017 WL 3928306, at *4) (emphasis in original). However, the Commissioner leaves out the last sentence of the paragraph, which states:

> An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3.

Social Security Ruling 17-2p, 2017 WL 3928306, at *4. Accordingly, although the Commissioner is correct that the ALJ was not required to discuss the reasons that Plaintiff's migraines did not medically equal Listing 11.02 at step three, the ALJ was still required to articulate those reasons elsewhere in the decision so that this Court can determine the basis for the ALJ's finding on equivalence. The Seventh Circuit has similarly recognized this requirement. "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)).

As the Commissioner points out, the articulation required by the ALJ is not high. In support, the Commissioner cites to *Rice v. Barnhart*, 384 F.3d 363, 369–370 (7th Cir. 2004), to state that "the Seventh Circuit has upheld listings analysis where the ALJ fails to even cite the relevant listing." Def.'s Resp. at 3, Dkt. 20. But even in *Rice*, the Seventh Circuit went on to state that despite the ALJ's failure to explicitly refer to the relevant listing, the ALJ's step three reasoning, as discussed in the decision as a whole, was not perfunctory. *Id.*

Accordingly, "even under this deferential standard of review, an administrative law judge must provide a logical bridge between the evidence and [her] conclusions." *Crowell v. Kijakazi*, 72 F.4th 810, 814 (7th Cir. 2023) (internal quotation marks and citation omitted). Although the Commissioner states that the ALJ "specifically addressed" Plaintiff's migraines, the listing

6

category that generally applies, and the applicability of Social Security Ruling 19-4p, the Commissioner does not identify where in the decision the ALJ provided any explanation or analysis of her equivalency determination, making it impossible for this Court to follow the ALJ's reasoning. Def.'s Resp. at 4, Dkt. 20. Despite medical record and opinion evidence that Plaintiff suffered daily migraines, along with Plaintiff's counsel specifically alerting the ALJ to Plaintiff's migraines and Social Security Ruling 19-4p at the administrative hearing, the ALJ never analyzed whether Plaintiff's migraines equaled Listing 11.02. Nowhere in the decision does the ALJ identify the requirements to equal Listing 11.02 or explain why Plaintiff's migraines fail to meet those requirements. It is difficult to undergo a meaningful review of the ALJ's decision if she provides no insight into her analysis. Accordingly, this Court finds the ALJ's listings analysis regarding Plaintiff's migraines and Listing 11.02 was perfunctory.

      Furthermore, although not argued by the Commissioner, this Court cannot say that the ALJ's perfunctory analysis was harmless. Plaintiff cites to records showing that her migraines could be equal in severity and frequency to the criteria of Listing 11.02B, namely that she suffered a medically severe migraine at least once per week for three consecutive months despite adherence to prescribed treatment. Even a brief review of the record reveals an abundance of evidence from Plaintiff's treating physicians that describe the frequency of Plaintiff's migraines, her limitations in functioning, her adherence to prescribed treatment, and side effects. *See, e.g.*, R. 905–10 (medical source statement from Plaintiff's neurologist describing typical headache event and stating that Plaintiff experiences throbbing migraines, nearly daily, lasting 4-5 hours untreated, with pain between 6/10 and 10/10); R. 542 (treater reporting daily headaches despite taking migraine medication); R. 544 (neurologist describing daily headaches that are worse with activity along with associated symptoms of photophobia, phonophobia, nausea, vomiting, and difficulty

7

concentrating); R. 1489 (treater stating that music and light makes headaches worse, and her migraine medication does not help); R. 1790 (neurologist stating that even after starting migraine medications, Plaintiff experienced daily headaches, frequent dizziness, vertigo, and motion intolerance); R. 1817 (neurologist reporting that Plaintiff's migraines are worse with activity, she must pace herself to avoid migraines, her migraines last 2 hours when treated with medications); R. 1827 (neurologist reporting cognitive processing issues resulting from her migraine medication). This medical evidence could support a finding that Plaintiff medically equaled Listing 11.02B. Although the ALJ acknowledged some of this evidence in her summary of the record, the ALJ did not connect this evidence to the specific Listing 11.02 requirements for migraines.

In the ALJ's summary of the medical record, she also identified treatment notes from July and December 2020 that reported Plaintiff's migraines had improved with medication. R. 26. However, at the November 2020 hearing, Plaintiff testified that she continues to have migraines daily that last 24 to 72 hours. R. 77. Plaintiff rated her headaches between 5 and 10 on a 10-point scale, with nausea daily and vomiting a couple times a week. R. 78, 81. Plaintiff testified that most of the time her medications help reduce the severity of her migraines, but her medications make her very tired. R. 78. In light of this evidence, the ALJ's mere reference to some improvement in Plaintiff's migraines sheds no light on whether Plaintiff's migraines could equal Listing 11.02B during the relevant period where she still reported severe migraines daily despite medication.

The Commissioner makes no attempt to address the medical evidence in support of an equivalency finding. Instead, the Commissioner argues that Plaintiff's migraines cannot medically equal Listing 11.02 because: (1) no doctor opined that Plaintiff's impairments met or equaled a listing; and (2) Plaintiff worked after the alleged disability onset date.

As to the opinion evidence, the Commissioner is correct that no medical source opined that Plaintiff equaled Listing 11.02. Nevertheless, Social Security Ruling 17-2p, 2017 WL 3928306, at *4, required the ALJ to "consider all evidence" when determining that Plaintiff's migraines did not medically equal Listing 11.02. This included the opinion from Plaintiff's treating neurologist, Dr. Athena Kostidis relating to her migraines.

Although Dr. Kostidis did not specifically opine on equivalency to Listing 11.02, she found that Plaintiff suffered from vestibular migraines and Meniere's disease, with migraines almost daily that were described as "throbbing" with a pain of 6 to 10 on a 10-point scale and caused functional difficulties. R. 905–10. Plaintiff experienced vertigo, nausea, vomiting, photosensitivity, and mental confusion with her migraines, which lasted between four hours and all day. Plaintiff's migraines were triggered or worsened by weather changes, gluten, lack of sleep, menstruation, noise, bright lights, and moving around. Dr. Kostidis reported that Plaintiff's migraines decreased in frequency and severity with treatment, but that Plaintiff recently informed her that she was again experiencing daily migraines despite treatment. Dr. Kostidis opined that Plaintiff would be absent from work about four times a month due to her migraines.

The ALJ found this opinion only "somewhat persuasive," R. 28, because Dr. Kostidis' opinion that Plaintiff's migraines prevented her from performing basic work activities was internally inconsistent with the opinion that Plaintiff had the ability to handle stress and perform tasks without breaks. The ALJ also found Dr. Kostidis' opinion inconsistent with Plaintiff's activities of daily living, which the ALJ identified earlier in the decision as caring for her children, assisting her children with homework, doing chores, shopping for necessities, and attending doctor appointments. *See* R. 19–20. But nowhere in the ALJ's decision does she explain what portion of Dr. Kostidis' opinion relating to Plaintiff's migraines she credited or why the ALJ found that the

9

frequency and severity of Plaintiff's migraines, as described by Dr. Kostidis and in numerous other treatment notes, did not medically equal the requirements of Listing 11.02.

Moreover, this is not a case where the ALJ relied on the state agency physicians' opinions on medical equivalency when determining that Plaintiff did not medically equal Listing 11.02. "Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Barnett*, 381 F.3d at 670; *see also* 20 C.F.R. § 404.1526(c) (when considering equivalency with a listing, the ALJ "consider[s] the opinion given by one or more medical or psychological consultants designated by the Commissioner"); Social Security Ruling 96-6p, 1996 WL 374180, at *3 ("[L]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight."). The state agency physicians did not address whether Plaintiff's migraines medically equaled Listing 11.02. Although the state agency physicians mentioned Plaintiff's history of migraines and that Plaintiff's activities of daily living were "limited due to migraines and dizziness," R. 101, their reports state that they only considered Plaintiff's impairments, including her migraines, in relation to Listings 2.07, 2.10, 12.04, and 12.06. R. 100, 130–31.

As to the Commissioner's reliance on Plaintiff working after the alleged onset date as a reason why Plaintiff failed to equal Listing 11.02, this is simply the Commissioner's *post hoc* rationalization. *See Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) ("Our review is limited also to the ALJ's rationales; we do not uphold an ALJ's decision by giving it different ground to stand upon."). The ALJ specifically pointed out that Plaintiff worked after the alleged onset date, but had not engaged in substantial gainful activity, and proceeded through the remainder of the

10

sequential evaluation process. Plaintiff's work activity was never mentioned by the ALJ as a reason why Plaintiff failed to meet or equal any listing, let alone Listing 11.02.

Given Plaintiff's testimony and the medical and opinion evidence, the Court cannot find that the ALJ's failure to sufficiently analyze Plaintiff's migraines for equivalence under Listing 11.02B was harmless because the Court cannot "predict with great confidence that the result on remand would be the same." *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). As such, a remand is required for the ALJ to fully consider Plaintiff's severe migraines and explain her analysis regarding equivalency. In remanding this case, the Court is not opining that the record evidence shows that Plaintiff's migraines are medically equivalent to Listing 11.02B, only that Plaintiff's migraines could equal that listing. On remand, the ALJ should consult a medical expert to opine on whether Plaintiff's migraines medically equal Listing 11.02. *See Minnick*, 775 F.3d at 935 ("A finding of medical equivalence requires an expert's opinion on the issue.").

### IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, and the Commissioner's motion is denied. The Commissioner's decision is reversed, and the case is remanded for further proceedings consistent with this opinion. This Court declines to order a finding of disability based on the record before it. It is more appropriate to remand to the ALJ to properly evaluate the evidence as outlined above and issue a new decision.

Date: August 30, 2024     By: *Lisa A. J.*
Lisa A. Jensen
United States Magistrate Judge