IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

|  |  |  |
|---|---|---|
| Jennifer C., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No. 3:23-cv-50347 |
| v. | ) | |
| | ) | Magistrate Judge Margaret J. Schneider |
| Michelle King, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| *Defendant.* | ) | |

## AMENDED MEMORANDUM OPINION AND ORDER

Plaintiff Jennifer C. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying her applications for disability insurance benefits and supplemental security income.[2] For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded.

## I. Background

In September 2018, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging a disability beginning on January 21, 2016 because of Meniere's disease, vertigo, tinnitus in the left ear, hearing loss in the left ear, anxiety, and depression. R. 120–21, 154. Plaintiff was 28 years old on her alleged onset date.

Following a hearing, an administrative law judge ("ALJ") issued a decision in April 2021[3] finding that Plaintiff was not disabled. R. 15–33. The ALJ found that Plaintiff had the following severe impairments: Meniere's disease, migraine headaches, vestibular disease, and hearing loss.[4] The ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain restrictions. The ALJ determined that Plaintiff could perform her past relevant work as a personal shopper, as actually and generally performed. The ALJ also determined that there were other jobs that existed in significant numbers in the national economy

---

[1] Michelle King is substituted for Martin O'Malley pursuant to Federal Rule of Civil Procedure 25(d).

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 28.

[3] The ALJ issued a decision on March 23, 2021, and then issued an amended decision on April 2, 2021. *See* R. 43–61.

[4] The ALJ listed Plaintiff's major depressive disorder and generalized anxiety disorder as severe impairments but in analyzing Plaintiff's mental impairments found them "nonsevere." R. 18.

1

that she could perform, namely light, unskilled jobs. After the Appeals Council denied Plaintiff's request for review on September 12, 2023, R. 1, Plaintiff filed the instant action. Dkt. 1.

## II. Standard of Review

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While substantial evidence is "more than a mere scintilla, . . . the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (internal quotation marks and citation omitted). An ALJ "need not specifically address every piece of evidence but must provide a logical bridge between the evidence and [the] conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (internal quotation marks and citation omitted); s*ee also Warnell*, 97 F.4th at 1054.

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (internal quotation marks and citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, reweighing or resolving conflicts in the evidence, or deciding questions of credibility. . . . [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020).

## III. Discussion

Plaintiff challenges the ALJ's decision on three grounds: (1) the ALJ failed to conduct a proper assessment of listing-level severity as to Plaintiff's migraines pursuant to Social Security Ruling 19-4p; (2) the ALJ failed to include any assessment of how Plaintiff's combined impairments limit her ability to sustain the on-task and attendance requirements of full-time work; and (3) the ALJ failed to support her rejection of two treating source opinions that Plaintiff would be absent from work at least four days per month. As explained below, the Court agrees that the ALJ's evaluation of Plaintiff's migraines requires a remand.

A claimant is eligible for benefits if she has an impairment that meets or equals an impairment found in the listing of impairments. 20 C.F.R. § 404.1520(d). The listings specify the criteria for impairments that are considered presumptively disabling. 20 C.F.R. § 404.1525(a). A claimant may also demonstrate presumptive disability by showing that her impairments are accompanied by symptoms that are equal in severity to those described in a specific listing. 20 C.F.R. § 404.1526(a). Therefore, at step three of the sequential evaluation process, an ALJ must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The listings contain no specific entry for migraines or headaches. However, Social Security Ruling 19-4p provides that Listing 11.02 for epilepsy is most analogous for evaluating migraines and notes that a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in paragraphs B or D of Listing 11.02 for dyscognitive seizures. Social Security Ruling 19-4p, 2019 WL 4169635, at *7; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.02. Social Security Ruling 19-4p provides:

> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description from an AMS [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

> Paragraph D of listing 11.02 requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02D, we consider the same factors we consider for 11.02B and we also consider whether the overall effects of the primary headache disorder on functioning results in marked limitation in: Physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.

Social Security Ruling 19-4p, 2019 WL 4169635, at *7.

Here, the ALJ found Plaintiff's migraines to be a severe impairment at step two. At step three, the ALJ concluded that Plaintiff's migraines did not meet or medically equal a listed impairment. The entirety of the ALJ's discussion is as follows:

> In terms of the claimant's migraine headaches, because there are no Listings for migraine headaches, the claimant's impairment was evaluated under Listing 11.00 for Neurological Disorders - Adult. The claimant does not have a condition or combination of conditions that give[] rise to a condition of Listing-level severity under this section. The undersigned notes that the claimant's headaches have been evaluated under SSR 19-4p, which instructs adjudicators on the analysis of primary headache disorders. Although this SSR only provides information about four

common types of primary headache disorders, diagnostic criteria for other types of primary headache disorders can be found in the ICHD-3.

R. 21.

Plaintiff argues that the ALJ erred by providing a conclusory evaluation while also failing to address the medical evidence in the record supporting the conclusion that Plaintiff's migraines medically equaled Listing 11.02. Citing Social Security Ruling 17-2p, the Commissioner points out that an ALJ is not required to do any more than state that Plaintiff's migraines do not medically equal a listing. Dkt. 20 at 3, 4. The Commissioner's reading of the law is correct. Social Security Ruling 17-2p states:

> If an adjudicator at the hearings or AC level believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding.

Social Security Ruling 17-2p, 2017 WL 3928306, at *4. However, Social Security Ruling 17-2p further provides that:

> An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3.

Social Security Ruling 17-2p, 2017 WL 3928306, at *4.

Accordingly, although the Commissioner is correct that "a rote statement that equivalence is not met is all that is required" of the ALJ at step 3, Def.'s Resp. at 3, Dkt. 20, the ALJ's step 3 determination still needs to be supported by substantial evidence. The decision as a whole must demonstrate that the ALJ considered the relevant evidence of record and provide a rationale sufficient for this Court to determine the basis for the ALJ's finding on equivalence.

As the Commissioner points out, the articulation required by the ALJ is not high. In support, the Commissioner cites to *Rice v. Barnhart*, 384 F.3d 363, 369–370 (7th Cir. 2004), to state that "the Seventh Circuit has upheld listings analysis where the ALJ fails to even cite the relevant listing." Def.'s Resp. at 3, Dkt. 20. But even in *Rice*, the Seventh Circuit went on to state that despite the ALJ's failure to explicitly refer to the relevant listing, the ALJ's step three reasoning, as discussed in the decision as a whole, was not perfunctory. *Id.* Accordingly, "even under this deferential standard of review, an administrative law judge must provide a logical bridge between the evidence and [her] conclusions." *Crowell v. Kijakazi*, 72 F.4th 810, 814 (7th Cir. 2023) (internal quotation marks and citation omitted).

The Commissioner maintains that the ALJ's RFC determination and step 4 and step 5 findings provide this rationale. However, in reviewing the decision as a whole, this Court does not find sufficient discussion of the relevant evidence or explanation to support the ALJ's equivalency determination.

Plaintiff cites to records showing that her migraines could be equal in severity and frequency to the criteria of Listing 11.02B, namely that she suffered a medically severe migraine at least once per week for three consecutive months despite adherence to prescribed treatment. Even a brief review of the record reveals an abundance of evidence from Plaintiff's treating physicians that describe the frequency of Plaintiff's migraines, her limitations in functioning, her adherence to prescribed treatment, and side effects. *See, e.g.*, R. 905–10 (medical source statement from Plaintiff's neurologist describing typical headache event and stating that Plaintiff experiences throbbing migraines, nearly daily, lasting 4-5 hours untreated, with pain between 6/10 and 10/10); R. 542 (treater reporting daily headaches despite taking migraine medication); R. 544 (neurologist describing daily headaches that are worse with activity along with associated symptoms of photophobia, phonophobia, nausea, vomiting, and difficulty concentrating); R. 1489 (treater stating that music and light makes headaches worse, and her migraine medication does not help); R. 1790 (neurologist stating that even after starting migraine medications, Plaintiff experienced daily headaches, frequent dizziness, vertigo, and motion intolerance); R. 1817 (neurologist reporting that Plaintiff's migraines are worse with activity, she must pace herself to avoid migraines, her migraines last 2 hours when treated with medications); R. 1827 (neurologist reporting cognitive processing issues resulting from her migraine medication).

Despite medical record and opinion evidence that Plaintiff suffered daily migraines, along with Plaintiff's counsel specifically alerting the ALJ to Plaintiff's migraines and Social Security Ruling 19-4p at the administrative hearing, the ALJ did not specifically analyze the frequency and severity of Plaintiff's migraines to sufficiently support the RFC determination and a finding of no equivalence. It is difficult to undergo a meaningful review of the ALJ's decision if she provides no insight into her analysis.

In the ALJ's summary of the medical record, she identified treatment notes from July and December 2020 that reported Plaintiff's migraines had improved with medication. R. 26. However, at the November 2020 hearing, Plaintiff testified that she continues to have migraines daily that last 24 to 72 hours. R. 77. Plaintiff rated her headaches between 5 and 10 on a 10-point scale, with nausea daily and vomiting a couple times a week. R. 78, 81. Plaintiff testified that most of the time her medications help reduce the severity of her migraines, but her medications make her very tired. R. 78. In light of this evidence, the ALJ's mere reference to some improvement in Plaintiff's migraines in 2020 sheds no light on whether Plaintiff's migraines could equal Listing 11.02B during the relevant period or whether she could function within the limits of the RFC where she still reported severe migraines daily despite medication.

The Commissioner makes no attempt to address the medical evidence in support of an equivalency finding. Instead, the Commissioner argues that Plaintiff's migraines cannot medically equal Listing 11.02 because: (1) no doctor opined that Plaintiff's impairments met or equaled a listing; and (2) Plaintiff worked after the alleged disability onset date.

As to the opinion evidence, the Commissioner is correct that no medical source opined that Plaintiff equaled Listing 11.02. *See* 20 C.F.R. § 404.1526(c) (stating that when considering equivalency with a listing, the ALJ "consider[s] the opinion given by one or more medical or psychological consultants designated by the Commissioner"). But this is not a case where the ALJ found a lack of equivalency after receiving an expert opinion on the issue. The only medical source to opine on medical equivalency were the state agency reviewing physicians. However, the state agency physicians did not address whether Plaintiff's migraines medically equaled Listing 11.02. Although the state agency physicians mentioned Plaintiff's history of migraines and that Plaintiff's activities of daily living were "limited due to migraines and dizziness," R. 101, their reports state that they only considered Plaintiff's impairments, including her migraines, in relation to Listings 2.07, 2.10, 12.04, and 12.06. R. 100, 130–31. Moreover, the ALJ found the state agency physicians' opinions, which restricted Plaintiff to medium work, "less persuasive," R. 30, because their opinions were only partially consistent with treatment notes, "which suggest that she would be limited to a light exertional level of activity secondary to vertigo and chronic migraines." R. 30.

Nevertheless, Social Security Ruling 17-2p, 2017 WL 3928306, at *4, required the ALJ to "consider all evidence" when determining that Plaintiff's migraines did not medically equal Listing 11.02. This included the opinion from Plaintiff's treating neurologist, Dr. Athena Kostidis relating to her migraines. This Court examines the ALJ's evaluation of Dr. Kostidis' opinion, and the resulting RFC, to determine whether it supplies the necessary rationale to support the ALJ's determination at step 3.

Although Dr. Kostidis did not specifically opine on equivalency to Listing 11.02, she found that Plaintiff suffered from vestibular migraines and Meniere's disease, with migraines almost daily that were described as "throbbing" with a pain of 6 to 10 on a 10-point scale and caused functional difficulties. R. 905–10. Plaintiff experienced vertigo, nausea, vomiting, photosensitivity, and mental confusion with her migraines, which lasted between four hours and all day. Plaintiff's migraines were triggered or worsened by weather changes, gluten, lack of sleep, menstruation, noise, bright lights, and moving around. Dr. Kostidis reported that Plaintiff's migraines decreased in frequency and severity with treatment, but that Plaintiff recently informed her that she was again experiencing daily migraines despite treatment. Dr. Kostidis opined that Plaintiff would be absent from work about four times a month due to her migraines.

The ALJ found this opinion only "somewhat persuasive," R. 28, because Dr. Kostidis' opinion that Plaintiff's migraines prevented her from performing basic work activities was internally inconsistent with the opinion that Plaintiff had the ability to handle stress and perform tasks without breaks. But the ALJ makes no distinction between Plaintiff's functional capacity during a migraine as opposed to when she is not suffering from a migraine. Dr. Kostidis specifically found that Plaintiff was precluded from performing basic work activities and would need a break from the workplace "during a migraine." R. 908. Accordingly, Dr. Kostidis found that Plaintiff would be absent from work four times a month due to her migraines, despite her ability to handle stress and work without breaks when not suffering from a migraine. The ALJ made no attempt to address this portion of Dr. Kostidis' opinion, despite vocational expert testimony that being absent two days per month would be work preclusive. R. 90.

The only other reason the ALJ provided for discounting Dr. Kostidis' opinion was because the opinion was inconsistent with Plaintiff's activities of daily living, which the ALJ identified earlier in the decision as caring for her children, assisting her children with homework, doing chores, shopping for necessities, and attending doctor appointments. *See* R. 19–20. But Dr. Kostidis specifically reported Plaintiff's efforts to "pace herself" during her activities to avoid headaches. R. 1817. Plaintiff also reported that her boyfriend helps her with the children, and she takes frequent breaks due to headaches. R. 306–07. The ALJ did not sufficiently address these qualifications to Plaintiff's activities.

Nowhere in the ALJ's decision does she sufficiently explain what portion of Dr. Kostidis' opinion relating to Plaintiff's migraines she credited or why the ALJ found that the frequency and severity of Plaintiff's migraines, as described by Dr. Kostidis and in numerous other treatment notes, did not warrant a more restrictive RFC while her migraines were occurring. The Court finds that the ALJ's evaluation of Dr. Kostidis' opinion, and the resulting RFC limitations based on that evaluation, are not supported by substantial evidence and require a remand. Moreover, the ALJ's analysis is insufficient to allow this Court to conduct a meaningful judicial review of the reasoning necessary to support her step 3 determination.

The Court also finds that the Commissioner's reliance on Plaintiff working after the alleged onset date does not preclude a remand. Although the ALJ identified that Plaintiff earned $1,754.81 in 2016, $13.13 in 2017, and $891.66 in 2019, the ALJ identified no work activity for 2018. It is not clear of the exact dates that Plaintiff worked, but with only limited earnings in 2017 and no work activity for 2018, Plaintiff could qualify for a closed period of disability for a continuous 12-month period where Plaintiff was disabled and not working. This Court is not opining on whether Plaintiff could qualify for a closed period of disability. But given this evidence, it would be more appropriate for the ALJ to consider and develop this issue in the first instance on remand.

Given all these reasons, the Court cannot find that the ALJ's evaluation of Plaintiff's migraines, for equivalence under Listing 11.02 or in the RFC, is supported by substantial evidence. As such, a remand is required for the ALJ to fully consider Plaintiff's severe migraines and sufficiently explain her basis to support the equivalency determination and RFC limitations. In light of the lack of opinion evidence on the issue of equivalence, on remand this Court recommends that the ALJ consult a medical expert to opine on whether Plaintiff's migraines medically equal Listing 11.02.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, and the Commissioner's motion is denied. The Commissioner's decision is reversed, and the case is remanded for further proceedings consistent with this opinion. This Court declines to order a finding of disability based on the record before it. It is more appropriate to remand to the ALJ to properly evaluate the evidence as outlined above and issue a new decision.

Date: January 24, 2025

By: _Margaret J. Schneider_
Margaret J. Schneider
United States Magistrate Judge